IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LANDSCAPES UNLIMITED, LLC, a Nebraska limited liability company, and LANDSCAPES HOLDING, LLC, a Nebraska limited liability company, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 8:05CV425 |
| v. | ) ) | |
| LEXINGTON INSURANCE COMPANY, a Delaware corporation, | ) ) ) | MEMORANDUM OPINION |
| Defendant. | ) ) | |

This matter is before the Court on the motions for summary judgment filed by defendant Lexington Insurance Company ("Lexington") (Filing No. 43) and plaintiffs Landscapes Unlimited, LLC and Landscapes Holdings, LLC (collectively "Landscapes")(Filing No. 50). The Court has reviewed the motions, the briefs in support and opposition, the evidentiary submissions, and the applicable law, and now makes the following findings and conclusions.

I.  INTRODUCTION

Defendant Lexington is in the business of issuing liability and umbrella insurance coverage in Nebraska (Complaint at ¶ 4). Landscapes is comprised of two Nebraska limited liability companies which design and construct golf courses.

In September, 2001, Landscapes entered into a contract with the Maryland Economic Development Corporation to construct

two 18-hole golf courses, a clubhouse, maintenance facility, practice tees and practice greens in Anne Arundel County, Maryland (the "Project").

Lexington issued a commercial property policy (Policy No. 1281424) to Landscapes which took effect on January 1, 2003. The policy was to be effective until January 1, 2004. Generally, the policy provided insurance coverage to Landscapes for "all risk of direct physical loss of damage including flood or earthquake." (Policy Pg. 1, Item 4, Bates Stamp Number 112). The policy's limit of insurance was $7,500,000 per occurrence" and was "subject to sublimits as per addendum." (Policy Pg. 1, Item 3, Bates Stamp Number 112). The addendum provided for a $500,000 sublimit on coverage per occurrence for each peril of flood (Policy Addendum, Endorsement C, Bates Stamp Number 119). The addendum lists several different deductibles, including a deductible of "5% OF THE VALUES AT RISK FOR THE PERIL OF FLOOD (MIN. $25,000)." (Policy Addendum, Endorsement C, Bates Stamp Number 119).

On August 9, 2003, portions of the Project were damaged by flood. Landscapes' covered and reimbursable loss from the flood was determined to be $407,733.18, less the applicable deductible. Lexington calculated the deductible as being 5% of the value of the property insured. In June 2005, Lexington issued payment of $161,263.30 to Landscapes.

This lawsuit was filed on September 8, 2005 (Filing No. 1). Landscapes asserts claims alleging breach of contract and bad faith on the part of Lexington. At issue in both motions is the proper calculation of the deductible for the August 9, 2003, flood loss. Landscapes asserts that Lexington has erroneously calculated the deductible. Lexington suggests that the policy language is ambiguous because the term "values at risk" is never defined. Landscapes asserts that the appropriate definition of this term would find that the "values at risk" is the value at risk to Lexington under the policy which, for flood damage, is a maximum of $500,000. Multiplying 5% by $500,000, the deductible should be $25,000 according to Landscapes.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). On a motion for summary judgment, the Court must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 250. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324. And if the plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial. *Id.* at 322-23.

### III.   DISCUSSION

A.   Choice of Law

The plaintiffs claim that the law of Nebraska applies to this case, while defendant argues the law of Maryland should apply. In a diversity case, the forum state's choice of law rules govern. *See Klaxon Co. v. Stentor Bee. Mfg.* Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). Nebraska generally follows the Restatement (Second) of Conflicts of Laws

("Conflicts"). *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687 (8th Cir. 2001). Nebraska courts are guided by *Conflicts* § 193 in determining the choice of law with respect to an insurance contract. *See Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d at 197, 202-03 (Neb. 2001)(referring to sections of the Restatement that deal with conflict of laws disputes involving specific types of contracts as providing "guidance"). The validity of a casualty insurance contract and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties. *Conflicts* § 193. Thus, a presumption exists in favor of the law of the "state which the parties understood was to be the principal location of the insured risk during the term of the policy" with respect to casualty insurance. *General Ceramics, Inc. v. Firemen's Fund Ins. Cos.*, 66 F.3d 647, 653 (3d Cir. 1995).

Landscapes was securing insurance relative to multiple projects in multiple states. The insurance contract language does not contemplate a single project as the contract provides that the territory is limited to the United States, its territories and possessions and Canada (Filing No. 45, Exhibit

-5-

19, Defendant's Evidence Index, Bates Stamp p. 133).  Further, the coverage limits reflect the contemplation of multiple job sites by specifying "for any one job site" after various sublimits.

In considering the provisions of *Conflicts* § 193, reference should be made to Comment b. *Principal location of risk* which provides in pertinent part as follows:

> The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) whether the policy covers a group of risks that are scattered throughout two or more states.

Conflicts § 193 cmt. b.

Here, the policy covers risks scattered throughout two or more states.  The Fifth Circuit Court of Appeals has held, applying *Conflicts* § 193, that where the relevant policy is one which insures nationwide risks and specific risk locations are not listed in the policy, that the law where the incident occurred does not necessarily control.  *Evangelical Lutheran Church in America  v. Atlantic Mutual Insurance Co.*, 169 F.3d

947, 949-50 (5th Cir. 1999)("ELCA").  *ELCA* involved a synod which had negotiated insurance policies in Chicago which were delivered through a New York insurance broker and involved claims related to activities that occurred in Texas.  *ELCA*, 169 F.3d at 949.  On appeal, the Fifth Circuit reasoned that the law of Illinois, where the synod was headquartered and the insurance contract was delivered, would apply.  *Id*. at 950.  Applying Illinois law which, like Nebraska law, follows *Conflicts* § 193, the court affirmed the decision of the lower court, determining that "the place of the insured risk does not receive special consideration where risks are nationwide."  *Id.*

The *ELCA* court distinguished the case of *Society of Mount Carmel, et al, v. National Ben Franklin Insurance Co. of Illinois*, 268 Ill. App. 3d 655 (Ill. 1994), in which the Illinois Court of Appeals had determined that the law of the site of the occurrence would apply.  In that case, as noted by the *ELCA* court, the occurrence site was specifically listed in the policy, unlike the situation before the court in *ELCA*.  *ELCA*, 169 F.3d at 950.  As in *ELCA*, the matter before the Court involves a nationwide insurance policy with no specific job site locations listed in the policy.  Accordingly, as was determined in the *ELCA* case, the place where the insurance policy and the plaintiff is headquartered should control, which in this case is Nebraska.

Lexington asserts that *Conflicts* § 193, comment f supports a finding that Maryland law should control because this situation is akin to the situation discussed therein suggesting that a policy written to cover three houses in three different states should act like three independent policies as to each state because states usually require "a special statutory form." *Conflicts* § 193 cmt. f.  According to comment f, at least "that portion of a policy which incorporates a special statutory form of a state would be construed in accordance with the rules of construction of that state."  *Id*.

This case is different.  Here, parties have not directed the Court to, and the Court has not independently identified, any special statutory form unique to Maryland. Further, the policy addressed in comment f addresses the situation where all parties know, at the time a policy is issued, the specific properties being covered and their locations.  Here, that is not the case.  The Lexington policy covers all Landscapes job sites anywhere in the United States and Canada.  No specific job sites are identified.  Thus, it is factually different from the situation discussed in comment f.

Further, the true focus of the Court's analysis should be on the second portion of *Conflicts* § 193 which provides that "unless with respect to the particular issue, some other state has a more significant relationship under the principles stated

-8-

in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." Lexington has acknowledged that the only issue before the Court is the interpretation and application of the deductible under the policy (Motion to Amend, Filing No. 39). Nebraska is the state with the most significant relationship to this issue when the choice of law principles under *Conflicts* § 6 and § 188 are examined.

Section 6 provides in relevant part as follows:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>    (a) the needs of the interstate and international systems,
>    (b) the relevant policies of the forum,
>    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>    (d) the protection of justified expectations,
>    (e) the basic policies underlying the particular field of law,
>    (f) certainty, predictability and uniformity of result, and
>    (g) ease in the determination and application of the law to be applied.

In applying the principles stated in § 6, § 188 must also be consulted. *Conflicts* § 188 provides as follows:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place of contracting,
>> (b) the place of negotiation of the contract,
>> (c) the place of performance,
>> (d) the location of the subject matter of the contract, and
>> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contracts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.

Applying first the principles set forth in *Conflicts* § 188, the place of contracting is the State of Nebraska. It is undisputed that plaintiffs and the insurance broker are located in Nebraska (Defendant's Brief, p. 9, note 7, Filing No. 45,

Exhibit 10, Defendant's Evidence Index 7:10-12, Filing No. 46). As to the place of negotiation of the contract, the insured plaintiffs and the broker are located in the State of Nebraska, and the quote for insurance was obtained from Michael Griswold who was located in Chicago, Illinois (Exhibit 20, Defendant's Evidence Index, Transcript of Deposition of Michael Griswold, 7:3-8:7, Filing No. 47).  The policy was issued with the application of Nebraska law clearly contemplated because a State of Nebraska Surplus Lines Tax Consent Form was completed and signed by a representative of Landscapes (Filing No. 47, Ex. 19, Bates Stamp p. 113).  In addition, the State of Nebraska is where Landscapes is located and paid the premium to its broker.  The location of the subject matter of the contract is throughout the United States (Defendant's Brief, p. 9, Filing No. 45).  As to the domicile, residence, nationality, place of incorporation and place of business of the parties, the plaintiff entities are domiciled and incorporated in the State of Nebraska (Exhibit 1, Defendant's Evidence Index, Plaintiffs' Complaint, Paragraph 2, Filing No. 46).  All but two of the named insureds under the policy are entities organized and existing under the laws of the State of Nebraska (Exhibit 53, Plaintiffs' Supplemental Evidence Index, Affidavit of Michael Robert Surls, ¶¶ 2, 3, 4, 5 and 6). Landscapes transacts business throughout the United States (Exhibit 2, Defendant's Evidence Index, Transcript of Deposition

of Mike Surls, 30:14-17, Filing No. 46). Lexington is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business in Boston, Massachusetts (Lexington Insurance Company's Counterclaim to Plaintiffs' Complaint, Paragraph III, Filing No. 7). Lexington conducts business throughout the United States.

Section 6 comment c states that "[i]t is not suggested that this list of factors is exclusive." It further suggests that the factors mentioned are not listed in the order of their relative importance. Conflicts § 6 cmt. c. The comment also provides:

> In other areas, such as in Wrongs (Chapter 7) and Contracts (Chapter 8), the difficulties and complexities involved have as yet prevented the courts from formulating a precise rule, or series of rules, which provide a satisfactory accommodation of the underlying factors in all of the situations which may arise. All that can presently be done in these areas is to state a general principle, such as application of the local law "of the state of most significant relationship," which provides some clue to the correct approach but does not furnish precise answers. In these areas, the courts must look in each case to the underlying factors themselves in order to arrive at a decision which will best accommodate them.

*Conflicts*, § 6 cmt. c.

-12-

>   Section 6 comment e states:
>
>>   Two situations should be distinguished.  One is where the state of the forum has no interest in the case apart from the fact that it is the place of the trial of the action.  Here the only relevant policies of the state of the forum will be embodied in its rules relating to trial administration (see Chapter 6).  The second situation is where the state of the forum has an interest in the case apart from the fact that it is the place of trial.  **In this latter situation, relevant policies of the state of the forum may be embodied in rules that do not relate to trial administration**.

*Conflicts* § 6 cmt. e. (emphasis added).

Here, Lexington issued the insurance policy as a surplus lines carrier (Exhibit 19, Defendant's Evidence Index, p. 000112-000114, Filing No. 47).  Nebraska, the forum state, has statutes that establish policies relative to property and casualty insurance provided by surplus line carriers.  In particular, Nebraska regulates the activities of surplus lines insurance carriers and surplus lines licensees under the provisions of *Neb. Rev. Stat.* § 44-5501 et. seq.  Conversely, Maryland has no relationship to this loss other than being the situs of the storm which resulted in the loss to the plaintiff entities.  No Maryland entity or person is impacted by this loss or the result of this litigation.  In addition, Maryland has no interest in the loss or the application of the deductible.

Entities such as Landscapes, who conduct business in several states and secure insurance relative to their activities in those several states through a single policy covering all job sites in all states, are entitled to certainty, predictability and uniformity in result. This can only be achieved by applying the laws of the forum state, Nebraska, to issues regarding the contract for insurance. This result is not unfair to Lexington, a carrier that knows that Landscapes' business takes place in multiple states and where Lexington chooses to issue its policy under the laws of the State of Nebraska. The Court finds that the substantive law of the State of Nebraska applies.

B. Contract Interpretation

An insurance policy is a contract. *American Fam. Mut. Ins. Co. v. Hadley,* 264 Neb. 435, 439, 648 N.W.2d 769, 775 (2002). When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Reisig v. Allstate Ins. Co.*, 264 Neb. 74, 81, 645 N.W.2d 544, 550 (2002). The contract must be construed as a whole and, if possible, effect must be given to every part thereof. *Id.* Regarding words in an insurance policy, the language should be considered not in accordance with what the insurer intended the words to mean but according to what a reasonable person in the position of the

insured would have understood them to mean.  *Decker v. Combined Ins. Co. of Am.,* 244 Neb. 281, 284, 505 N.W.2d 719, 722 (1993).

"Under Nebraska law, a court interpreting a contract, such as an insurance policy, must first determine, as a matter of law, whether the contract is ambiguous."  *Reisig,* 264 Neb. at 81, 645 N.W.2d at 550.  "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings."  *Id.*  The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous.  *Tighe v. Combined Ins. Co. of America,* 261 Neb. 993, 999, 628 N.W.2d 670, 675 (2001).  An ambiguous insurance policy will be construed in favor of the insured.  *Id.*  The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.  *Reisig,* 264 Neb. at 81, 645 N.W.2d at 550.

The policy does not define "values at risk."  Under Nebraska law, words in an insurance policy must be accorded the meaning that "a reasonable person in the position of the insured would have understood them to mean."  *Decker,* 244 Neb. at 284, 505 N.W.2d at 722.  Landscapes asserts that the appropriate definition of "values at risk" is the value at risk to Lexington.  Defendants assert that "values at risk" is best understood to

mean the value of the property insured.  The Court finds each of these interpretations to be reasonable.  Thus, the Court finds that "values at risk" is susceptible of at least two reasonable but conflicting interpretations.  *Tighe*, 261 Neb. at 999, 628 N.W.2d at 675.  Therefore, the contract is ambiguous, and, under Nebraska law, must be construed in favor of the insured.

The Court finds that a reasonable person in the position of the insured would have understood the phrase "values at risk" to mean the value at risk to Lexington, in the context used, because a reasonable person in the position of Landscapes would find the maximum deductible that would occur under defendants reasoning of $375,000 (5% of $7,500,000) to be unreasonable in the context of a $500,000 maximum per occurrence covered loss under the flood sublimit.  While Lexington asserts that this interpretation renders language superfluous in the flood specific deductible, the Court disagrees.  Lexington asserts that this interpretation would convert a 5% of values at risk deductible with a minimum of $25,000 to a flat rate deductible of $25,000.  The Court disagrees because there is no evidence to suggest that the deductible minimum is not fixed, while the amount of insurance coverage is changeable.  In other words, the Court finds it reasonable that Lexington's policy may always contain a $25,000 minimum deductible, regardless of the amount at risk.  While in the present context the $25,000 minimum

-16-

also happens to be 5% of the value at risk, it is not always necessarily so.  Instead, if the amount of insurance coverage was $1,000,000, the deductible could remain as written and while the minimum would remain $25,000, it would then be possible for the deductible to be as much as $50,000 if a claim was for the maximum coverage value of $1,000,000.  Thus, the Court's interpretation does not render language in the policy deductible for flood damage superfluous and is reasonable.

Applying this interpretation to the contract language, it follows that the policy deductible is properly calculated as $25,000 because, under the policy, the value at risk to Lexington for flood damage is a maximum of $500,000.  Multiplying 5% by $500,000, the deductible should be $25,000.

**Bad Faith Claim**

Landscapes also asserts a claim of bad faith against Lexington asserting that Lexington breached its duty of good faith and fair dealing in not timely paying Landscapes' claim in full with a properly calculated deductible of $25,000.  The Court finds that Lexington did not act in bad faith because, while Lexington's interpretation is not that adopted by the Court, it

is not unreasonable.  A separate order will be entered in accordance with this memorandum opinion.

        DATED this 20th day of November, 2006.

                BY THE COURT:

                /s/ Lyle E. Strom
                _____
                  LYLE E. STROM, Senior Judge
                  United States District Court